IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| ROBERT L. MATTHEWS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:17cv032–HEH |
| | ) | |
| TRACY M. GEE, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION
(Granting Motion to Dismiss)

Plaintiff Robert L. Matthews ("Plaintiff") brings suit *pro se* against Defendants Tracy Gee, Nicole Clark, and the County of Lunenburg, Virginia (collectively "Defendnats"). According to Plaintiff, Gee and Clark, in their respective capacities as County Administrator and Human Resource Professional for Lunenburg County, are liable for committing tortious conduct and for violating various state and federal statutes and regulations in connection with Plaintiff's workplace injury and subsequent firing.

This matter comes before the Court on Defendants' Motion to Dismiss. (ECF No. 5.) Defendants seek dismissal of all claims. Their central arguments are that Plaintiff's state-law claims are all barred by the relevant statutes of limitations and that Plaintiff has failed to sufficiently plead his other claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

The Defendants included an appropriate Roseboro Notice with the Motion, as required by Local Civil Rule 7(K) and the Fourth Circuit's decision in *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

Each side has filed memoranda supporting their respective positions. The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J).

For the reasons set forth below, the Court will grant Defendants' Motion.

## I. BACKGROUND

As required by Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court assumes Plaintiff's well-pleaded allegations to be true and views all facts in the light most favorable to him. *T.G. Slater & Son v. Donald P. & Patricia A. Brennan, LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citing *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). At this stage, the Court's analysis is both informed and constrained by the four corners of Plaintiff's Amended Complaint. Viewed through this lens, the facts are as follows.

This case arises from Plaintiff's employment with Lunenburg County. (Am. Compl. ¶¶ 5–6, ECF Nos. 1-10, 1-11.) In June 2007, the County hired Plaintiff as a "buildings and grounds technician." (*Id.* ¶ 5.) Three years later, in July 2010, Defendants offered Plaintiff additional part-time work as an assistant Animal Control Officer ("ACO"). (*Id.* ¶ 6.) Plaintiff received initial training for the ACO position in March, 2011. (*Id.* ¶ 9.) After completing his initial training, Plaintiff requested that

2

Defendants provide him with additional training as well as personal protective equipment. (*Id.* ¶¶ 10–11.) Those requests were denied. (*Id.*)

On May 20, 2012, while working as an ACO, Plaintiff responded to a call reporting a dog attack. (*Id.* ¶ 12.) Immediately after Plaintiff arrived at the scene and exited his vehicle, the dog attacked him as well. (*Id.*) Plaintiff suffered multiple lacerations and punctures to his throat, hands, and wrists. (*Id.*) He also tore his right and left rotator cuffs, causing an 11% permanent partial disability. (*Id.*)

Because of his injuries, Plaintiff filed a Worker's Compensation claim which was approved. (*Id.* ¶ 13.) However, that "claim is still pending resolution and settlement." (*Id.*)

After the attack, "Defendant[s] terminated Plaintiff's employment in the position of ACO." (*Id.* ¶¶ 15–16.) Plaintiff remained out of work for two years while recovering from his work-related injuries. (*Id.* ¶ 16.)

Plaintiff alleges that in May, 2012, Defendants "participated in defamation of character and invasion of privacy by placing written statements and emails into Plaintiff's personnel file documenting non-work related and non-medical related hearsay and conversations purported to be fact." (*Id.* ¶ 17.) Plaintiff further alleges that Defendants shared those defamatory statements with several other individuals. (*Id.* ¶ 18.)

On May 1, 2014, Plaintiff returned to work as a buildings and grounds technician with Defendants' approval of light-duty restrictions. (Am. Compl. ¶ 19.) Despite Defendants' accommodations, Plaintiff continued to experience pain in his right shoulder. (*Id.* ¶ 20.) Consequently, Plaintiff took unpaid leave pursuant to the Family and Medical

3

Leave Act ("FMLA"), beginning on September 11, 2015, and lasting through December 4, 2015. (*Id.*) Plaintiff underwent shoulder surgery on September 25, 2015. (*Id.* ¶ 19.)

Prior to the surgery, Defendant gave Plaintiff a performance review which stated:

> [I]t has cost the County a great deal of additional part-time staffing to compensate for Mr. Matthews['s] restrictions. The County has gone above and beyond to accommodate the restrictions, but we must draw the line when it costs us more than our budget to get the job done. During Bob's previous years of employment, the County rarely had to get anyone to assist him to complete his duties. Contrarily, since his return in August 2014 [after left shoulder surgery due to dog attack] to full-time with restrictions, the County has had to utilize inmate assistance and pay part-time staff at an hourly rate to maintain the grounds, especially weedeating, changing light bulbs, checking overhead leaks, etc.

(*Id.* ¶ 21 (third alteration in original).)

On October 22, 2015, Plaintiff's Worker's Compensation physician submitted medical orders stating that Plaintiff's medical condition limited him to sedentary work and that he was restricted to "walking or standing occasionally, [o]ccasional lifting of 10 pounds maximum and/or carrying articles like small tools." (*Id.* ¶ 22.) Additionally, the physician prohibited Plaintiff from working with his right arm away from his body. (*Id.*)

On December 4, 2015, Plaintiff received a letter from Defendants indicating that his FMLA leave would expire on December 7, 2015. (*Id.* ¶ 23.) The letter stated that Plaintiff's failure to return to work that day would be deemed a resignation. (*Id.*) Plaintiff reported to work on December 4, 2015, seeking to return to his light duty restrictions. (*Id.* ¶ 24.) However, Defendants stated "no light duty work is available. You are terminated." (*Id.*)[1] On December 14, 2015, shortly after his termination,

---

[1] The Amended Complaint includes this statement in quotation marks but does not expressly state who said it.

Plaintiff states that his "restrictions were upgraded" by the attending Workers' Compensation physician. (*Id.*)

Plaintiff filed a complaint against Defendants in the Lunenburg County Circuit Court on August 30, 2016. (ECF No. 1-1.) That court dismissed the case against Defendants without prejudice because Plaintiff had pleaded insufficient facts to support a cause of action. (ECF No. 1-9.) Plaintiff subsequently filed his Amended Complaint on December 30, 2016, in the Lunenburg County Circuit Court. Defendants removed the case to this Court on January 17, 2017.

## II. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." *Id.* at 555, 570. In considering such a motion, a plaintiff's well-pleaded

5

allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *T.G. Slater*, 385 F.3d at 841 (citation omitted). Legal conclusions enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Court acknowledges that *pro se* complaints are afforded a liberal construction. *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006). The Court, however, need not attempt "to discern the unexpressed intent of the plaintiff." *Id.* Nor does the requirement of liberal construction excuse a clear failure in the pleading to allege a federally cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990). As the Fourth Circuit explained in *Beaudett v. City of Hampton*, "[t]hough [*pro se*] litigants cannot, of course, be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them." 775 F.2d 1274, 1276 (4th Cir. 1985).

### III. DISCUSSION

Defendants move to dismiss the Amended Complaint in its entirety. Plaintiff has attempted to enumerate his Amended Complaint into six separate "causes of action." However, some of these counts appear to contain multiple allegations, while others merely repeat previously stated claims. As best the Court can discern, the Amended Complaint alleges:

Count One: Common law negligence and regulatory violations resulting in Plaintiff's personal injury.

Count Two: Wrongful termination and failure to accommodate, both in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*

Count Three: Common law defamation as well as violations of the Privacy Act of 1974, 5 U.S.C. § 552a, and the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 104-191, 110 Stat. 1936.

Count Four: Failure to accommodate, in violation of the ADA.

Count Five: Retaliation, in violation of the ADA.

Count Six: Wrongful termination, in violation of the ADA.

Notwithstanding Plaintiff's organization of his claims, the Court will structure its analysis to address similar allegations together.

**a. Tort Claims**

Plaintiff's Amended Complaint alleges that he suffered personal injury and defamation as a result of Defendants' conduct. In Count One, Plaintiff alleges that his injuries from the 2012 dog attack were a result of Defendants' failure to provide him with adequate training and equipment. (Am. Compl. ¶ 31.) In Count Three, Plaintiff avers that Defendants "participated in defamatory actions" by including false statements in Plaintiff's personnel file and subsequently publishing those statements to a third party. (*Id.* ¶ 33.)

Defendants raise the affirmative defense that Counts One and Three of the Amended Complaint are procedurally barred by Virginia's statutes of limitations for personal injury and defamation. (Br. Supp. Mot. Dismiss 6, 10.) In response, Plaintiff urges the Court to adopt a "delayed accrual rule of discovery" for his personal injury and

7

defamation claims. (Pl. Second Br. Opp. Mot. Dismiss 4–5, ECF No. 14.) He concedes that if the Court uses the date of injury to determine when the statute of limitations began to run then his "opportunity to bring [an] action has expired." (Pl. First Br. Opp. Mot. Dismiss 1–2, ECF No. 12.) However, "Plaintiff requests that the date of discovery that injury has occurred be used to determine the statute of limitations." (*Id.* at 2)

Virginia law requires that "every action for personal injury, whatever the theory of recovery . . . shall be brought within two years after the cause of action accrues." Va. Code Ann. § 8.01-243(A). And "[e]very action for injury resulting from libel, slander, insulting words, or defamation shall be brought within one year after the cause of action accrues." VA Code Ann. § 8.01-247.1. Additionally, in Virginia, "when an injury is sustained in consequence of the wrongful or negligent act of another and the law affords a remedy, the statute of limitations *immediately attaches*." See *Jordan v. Sands*, 500 S.E.2d 215, 218 (Va. 1998) (emphasis added). Therefore, a personal injury or defamation claim does not toll during a period of time that the plaintiff was unaware of the actions—or illegality of those actions—giving rise to a claim.[2]

The Court finds that the state-law claims in Counts One and Three are barred by the relevant Virginia statutes of limitations. The conduct giving rise to Plaintiff's alleged injuries in Count One and Count Three occurred around May, 2012, yet Plaintiff did not file his initial complaint until well over four years later in August, 2016. (*See* Compl. 4; Am. Compl. ¶¶ 12, 17.) Furthermore, the statutes of limitations immediately attached at

---

[2] While there are statutory exceptions creating a discovery rule for some cases of fraud and medical malpractice, they are inapplicable here. *See* Va. Code Ann. § 8.01-243(C).

8

the time of injury, in May, 2012. There is no discovery rule under Virginia law which would cure Plaintiff's untimeliness.

Consequently, to the extent that Counts One and Three allege tortious injury in violation of Virginia law, they are time-barred and will be dismissed with prejudice.

**b. Regulatory Claims**

In Count One, Plaintiff also alleges that, by failing to provide him with adequate safety equipment, Defendants violated Federal Occupational Safety and Health Administration ("OSHA") regulations and the Virginia Occupational Safety and Health ("VOSH") Compliance Program. (Am. Compl. ¶ 31.) However, Plaintiff's allegations of those regulatory violations also fail.

Plaintiff cannot recover for alleged OSHA violations because those regulations do not provide for a private right of action. *See Minichello v. U.S. Indus., Inc.*, 756 F.2d 26, 29 (6th Cir. 1985) ("OSHA regulations can never provide a basis for liability because Congress has specified that they should not."); *Jeter v. St. Regis Paper Co.*, 507 F.2d 973, 977 (5th Cir. 1975) ("Congress did not intend OSHA to create a new action for damages in favor of employees."); *Byrd v. Fieldcrest Mills, Inc.*, 496 F.2d 1323, 1323 (4th Cir. 1974) (affirming district court decision that Occupational Safety and Health Act "preclude[s] a private remedy"). Similarly, no private right of action exists under Virginia law for VOSH violations. *See* VA Code Ann. § 40.1-49.4 (leaving exclusive enforcement power to the Commissioner of Labor and Industry).

9

Accordingly, to the extent that Plaintiff is attempting to state a claim for Defendants' purported regulatory violations, he cannot do so. Those claims will be dismissed with prejudice.

**c. Privacy Claims**

In Count Three, Plaintiff alleges that Defendants disseminated Plaintiff's personal employment and medical information. He contends that this constitutes violations of the Privacy Act and HIPAA. (Am. Compl. ¶ 33.) However, the Complaint fails to state a cognizable claim under either federal statute.

Plaintiff's allegations of violations of the Privacy Act fail because that statute only applies to federal agencies. *Wheeler v. Gilmore*, 998 F. Supp. 666, 668 n.4 (E.D. Va. 1998); *see also Polchowski v. Gorris*, 714 F.2d 749, 752 (7th Cir. 1983) (holding that the Privacy Act applies only to agencies of the United States Government); *St. Michael's Convalescent Hosp. v. California*, 643 F.2d 1369, 1373 (9th Cir. 1981) (holding that the Privacy Act's requirements do not apply to "state agencies or bodies."). Therefore, even if Defendants had engaged in conduct proscribed by the Privacy Act, Plaintiff has no cause of action under that statute.

Plaintiff's HIPAA violation claim also fails. Courts have consistently concluded that HIPAA does not create a private right of action. *Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006) (collecting cases); *Segen v. Buchanan General Hosp., Inc.*, 552 F. Supp. 2d 579, 584 (W.D. Va. 2007) ("[I]t is clear that a private right of action does not exist based upon HIPAA violations."). Thus Plaintiff cannot state a claim based on Defendants' purported HIPAA violation.

Therefore, any claims which Plaintiff attempts to raise pursuant to the Privacy Act or HIPAA will be dismissed with prejudice.

**d. ADA Claims**

As best as the Court can discern, Counts Two, Four, Five, and Six of Plaintiff's Amended Complaint each attempt to allege multiple claims arising under the ADA. This combination of claims includes: (1) wrongfully discharging Plaintiff from his positions with the County; (2) failure to provide reasonable accommodations for Plaintiff's disability; (3) failure to engage in an interactive process;[3] and (4) retaliation based on Plaintiff's worker's compensation claim. (Am. Compl., ¶¶ 32, 34–36.) The Court will discuss each in turn.

### *i. Wrongful Termination*

Plaintiff's first ADA allegation is that Defendants unlawfully discriminated against him when they fired him. "In a typical discharge case brought under the ADA, a plaintiff must prove by a preponderance of the evidence that (1) [he] was in the protected class; (2) [he] was discharged; (3) at the time of the discharge, [he] was performing [his] job at a level that met [his] employer's legitimate expectations; and (4) [his] discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio*, 53 F.3d 55, 58 (4th Cir.1995) (citations omitted).

---

[3] Nowhere in the Amended Complaint does Plaintiff use the words "interactive process." However, in his briefs, Plaintiff argues that he was attempting to raise interactive process claims. (*See* Pl. First Br. Opp'n Mot. Dismiss 3; Pl. Second Br. Opp'n Mot. Dismiss 9.) While the Court must constrain its analysis to the four corners of the Amended Complaint, because of Plaintiff's *pro se* status and to give him every reasonable inference as the non-moving party, the Court will address the interactive process allegation.

Count Two of Plaintiff's Amended Complaint alleges that Defendants violated the ADA by wrongfully terminating Plaintiff from his position as an ACO on May 20, 2012, after Plaintiff sustained extensive injuries while performing job-related activities. (Am. Compl., ¶¶ 15, 32.) However, Defendants have raised a statute of limitations defense to the 2012 termination claim. (Def. Br. Supp. Mot. Dismiss 7–8.)

Title II of the ADA does not contain a statute of limitations. *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 347 (4th Cir. 2011). The ADA predates Congress's establishment of the four-year catch-all statute of limitations for federal statutes. *Id.* Therefore, the Fourth Circuit has held that courts should adopt the "state statute of limitations that applies to the most analogous state-law claim." *Id.* (citing 42 U.S.C. § 1988(a)). As a result, the Fourth Circuit has concluded that "the one-year limitations period in the Virginia Disabilities Act applies to ADA claims brought in Virginia." *Id.* at 348.

Plaintiff's initial complaint addressing his 2012 termination was filed in the Lunenburg County Circuit Court on August 30, 2016. (Compl. 4.) This is well beyond the one-year statute of limitations for bringing ADA claims in Virginia. Consequently, any ADA claim regarding Plaintiff's 2012 termination is time-barred and will be dismissed with prejudice.

In Counts Two and Six, Plaintiff appears to allege wrongful discharge or discrimination with respect to his 2015 termination. However, the Court finds that Plaintiff has failed to state a plausible claim pursuant to Rule 12(b)(6). He has pleaded no facts indicating that he was performing his job at a level that met his employer's

legitimate expectations at the time he was discharged. Indeed, the Complaint concedes that Plaintiff was only able to return to light-duty work, not on a full-duty basis as required by Defendant. (Am. Compl. ¶¶ 23–24.)

Moreover, Plaintiff has failed to allege any facts indicating that his discharge occurred under circumstances that would permit an inference of discrimination based on his status as a disabled person. *See Baird v.* Rose, 192 F.3d 462, 470 (4th Cir. 1999) (holding that a plaintiff alleging discrimination under the ADA must demonstrate that "his or her disability played a motivating role in the employment decision"); *Ennis*, 53 F.3d at 62 (affirming summary judgement against plaintiff who failed to prove that termination was linked to her son's status as a disabled person). Plaintiff alleges that he was terminated for filing a workers' compensation claim and for his inability to return to full-duty work. Although Plaintiff's disability may have affected his ability to work, Plaintiff does not allege that his termination was based on discrimination due to his disability. Therefore, Plaintiff has failed to state a claim for wrongful termination under the ADA.

### ii. Failure to accommodate

The Complaint also lacks sufficient factual material to state a plausible claim that Defendants failed to accommodate Plaintiff's disability.

For a failure to accommodate claim, a plaintiff must plead sufficient facts to show that "(1) [he] qualifies as an 'individual with a disability,' (2) the [employer] had notice of [the plaintiff's] disability, (3) [the plaintiff] could perform the essential functions of the job with a reasonable accommodation, and (4) the [employer] refused to make any

13

reasonable accommodation." *Reyazuddin v. Montgomery Cty.*, 789 F.3d 407, 414 (4th Cir. 2015) (citation omitted). In this case, the only element in dispute is whether Plaintiff could perform the essential functions of the job with a reasonable accommodation.[4]

A reasonable accommodation is one that will not impose an "undue hardship" on the employer's operation of business. *See id.* at 416–417; *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995) (citations omitted) ("In mandating only those modifications that qualify as reasonable, Congress clearly meant to avoid placing employers in an untenable business position."); *see also* 42 U.S.C. § 12112(b)(5)(A). If a qualified individual cannot perform the essential functions of the job in question, an employer may be obligated to assign a disabled employee to a vacant position for which he is otherwise qualified. *Giles v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996). However, an employer is not obligated to "create a 'new' position for the disabled employee." *Id.* Additionally, the ADA does not reference "an individual's *future* ability to perform the essential functions of his position." *Myers*, 50 F.3d at 283. Therefore, a "reasonable accommodation is by its terms most logically construed as that which presently, or in the immediate future, enables the employee to perform the essential functions of the job in question." *Id.*

As to his 2015 termination, Plaintiff appears to allege that Defendants failed to provide reasonable accommodations by (1) refusing Plaintiff's request to return to light

---

[4] Without citing any authority, Defendants state the Plaintiff was not disabled within the meaning of the ADA because his injury was temporary. However, the Fourth Circuit has concluded that "an impairment is not categorically excluded from being a disability simply because it is temporary." *Summers v. Altarum Institute, Corp.*, 740 F.3d 325, 333 (4th Cir. 2014). Therefore, Plaintiff has cleared the low 12(b)(6) hurdle by pleading enough factual material for the Court to determine that he was disabled under the ADA.

duty work and (2) not extending Plaintiff's "ADA coverage" until his physical restrictions were lifted. (Am. Compl. ¶¶ 32, 24.) However, Plaintiff has failed to sufficiently plead that Defendants' refusal to accommodate his alleged disability violated the ADA.

First, Plaintiff asserts that upon return from FMLA leave he requested to perform only light duty work. But Defendants responded by informing him that "no light duty work [was] available." (Am. Compl. ¶ 24.) The Amended Complaint does not challenge the fact that no light duty position was available. Thus, it appears that Defendants would have had to create a new position for Plaintiff. The ADA simply does not require this. *Giles*, 95 F.3d at 499. Additionally, Plaintiff's second performance review clearly indicates that additional accommodations would have placed Defendants in an untenable business position. In pertinent part, the review states:

> [I]t has cost the County a great a great deal of additional part-time staffing to compensate for Mr. Matthews restrictions. The County has gone above and beyond to accommodate the restrictions, but we must draw the line when it costs us more than our budget to get the job done.

(Am. Compl. ¶ 21.) Therefore, even if Defendants had a vacant light work position available, such an accommodation would clearly continue to impose an "undue [financial] hardship" on Defendants. Even when viewed in the light most favorable to Plaintiff, the Amended Complaint fails to support his argument that light duty work would constitute a reasonable accommodation.

Plaintiff also states that he requested the accommodation of an extension of "ADA coverage"—which the Court interprets as a request for additional medical leave. (Am.

15

Compl. ¶ 24.) But the ADA only requires employers to provide accommodations which enable the disabled employee to perform the essential functions of his job. Because additional leave would necessarily render plaintiffs job unperformed, it is not the type of accommodation contemplated by the ADA. *See Myers*, 50 F.3d at 283 ("We therefore hold that reasonable accommodation does not require the County to wait indefinitely for Myers' medical conditions to be corrected . . . .").

Accordingly, Plaintiff's failure to accommodate claim will be dismissed.

### iii. Failure to Engage in an Interactive Process

Although Plaintiff fails to make an express interactive process allegation in his Complaint, his brief states that Defendants refused to engage in an "interactive process to determine any other reasonable accommodations." (Pl. Second Br. Opp. Def. Mot. Dismiss 9.) Mindful of its responsibility to provide a liberal construction for *pro se* complaints, the Court will address whether Plaintiff has stated a plausible claim for failure to engage in an interactive process.

An interactive process typically requires "that employers make a good-faith effort to seek accommodations." *Williamson v. Bon Secours Richmond Health Sys., Inc.*, 34 F. Supp. 3d 607, 613 (E.D. Va. 2014) (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 315 (3d Cir. 1999)). Persistent refusal to engage in discussions or take any remedial action could arguably constitute failure to engage in the interactive process. *See, e.g., Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 581–82 (4th Cir. 2015). Moreover, the ADA regulations provide:

> To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

29 C.F.R. § 1630.2(o )(3).

However, "the interactive process is not an end in itself; rather it is a means for determining what reasonable accommodations are available to allow a disabled individual to perform the essential job functions of the position outright." *Wilson v. Dollar General Corp.*, 717 F.3d 337, 347 (4th Cir. 2013) (citing *Rehling v. City of Chi.*, 207 F.3d 1009, 1015 (7th Cir. 2000)). Thus, "an employer who fails to engage in an interactive process will not be held liable if the employee cannot identify a reasonable accommodation that would have been possible." *Id.* (citations omitted). "Likewise, 'liability for failure to engage in an interactive process depends on a finding that, had a good faith interactive process occurred, the parties could have found a reasonable accommodation that would enable the disabled person to perform the job's essential functions.'" *Id.* (citing *Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 91 (1st Cir. 2012)).

Plaintiff's brief alleges that Defendant failed to offer an interactive process by refusing to give Plaintiff additional leave to allow the "treating physician to reevaluate the Plaintiff's medical condition and physical capabilities." (Pl. Second Br. Opp. Def. Mot. Dismiss 9.) However, as previously discussed, taking additional time off of work is not a reasonable accommodation.

The facts of this case are analogous to those in the Fourth Circuit's decision in *Wilson*. 717 F.3d 337. In that case, the plaintiff took eight total weeks of medical leave

after injuring his left eye. *Id.* at 340. On the day the plaintiff sought to return to work, he requested additional medical leave because his condition had worsened. *Id.* However, his employer gave the plaintiff the ultimatum to return to work that day or be terminated. *Id.* at 341. Unable to return to work, the plaintiff accepted his termination and sued the employer under the ADA. *Id.* On review, the Fourth Circuit held that the plaintiff's ADA claim failed because he did not "identify a possible reasonable accommodation that could have been discovered in the interactive process and would have allowed him to perform the essential functions of his position." *Id.* at 347.

Similarly here, Plaintiff fails to state a claim against Defendants for refusing to engage in an interactive process because Plaintiff has not identified a reasonable accommodation that would have allowed him to perform the essential functions of his job. Merely asking for additional medical leave is not an accommodation that would have enabled Plaintiff to perform his duties. Therefore, Plaintiff's claim of failure to engage in the interactive process will be dismissed.

### *iv. Retaliation*

Lastly, Plaintiff alleges that Defendants' termination of his employment was unlawful retaliation. "To establish a prima facie retaliation claim under the ADA, a plaintiff must prove (1) he engaged in protected conduct, (2) he suffered an adverse action, and (3) a causal link exists between the protected conduct and the adverse action." *Reynolds v. Am. Nat. Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012). In defining protected conduct, the ADA provides that, "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this

chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203.

Consequently, a person engages in protected conduct when he opposes a practice that the ADA makes illegal or makes an accusation that his employer has violated the ADA. *See Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 216 (4th Cir. 2002). Although a plaintiff need not show the conduct actually constituted an ADA violation, the person must allege "the predicate for a reasonable, good faith belief that the behavior she is opposing violates the ADA." *Id.*

Count Five of Plaintiff's Complaint alleges that "Plaintiff was wrongfully terminated in retaliation for costs associated with a legitimate [workers' compensation] claim in violation of the [ADA]." (Am. Comp. ¶ 35.) Plaintiff's allegations regarding his workers' compensation claim are wholly independent and separable from conduct made illegal by the ADA. Consequently, Plaintiff could not have a reasonable, good faith belief that his workers' compensation charges were protected activity under the ADA. As a result, Plaintiff's retaliation claims pursuant to the ADA will be dismissed.

## IV. CONCLUSION

Based on the foregoing, Defendant's Motion to Dismiss (ECF No. 5) will be granted. Counts One and Three will be dismissed with prejudice. Counts Two, Four, Five, and Six will be dismissed without prejudice.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: March 9 2017
Richmond, Virginia